UNITED STATES BANKRUPTCY COURT      FOR PUBLICATION
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                    Chapter 15

GOLD & HONEY, LTD.,          Case No. 09-70463 (AST)

      Debtor in a Foreign Proceeding.    (Joint Administration Proposed)
--------------------------------------------------------X
In re:                                    Chapter 15

GOLD & HONEY (1995) LP,     Case No. 09-70464 (AST)

      Debtor in a Foreign Proceeding.    (Joint Administration Proposed)
--------------------------------------------------------X

APPEARANCES:

Gary M. Kushner, Esq.
Forchelli, Curto, Crowe, Deegan,
Schwartz, Mineo & Cohn, LLP
330 Old Country Road, P.O. Box 31
Mineola, New York 11501

Lee Stremba, Esq.
Troutman Sanders LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174

HON. ALAN S. TRUST, United States Bankruptcy Judge:

## **MEMORANDUM OPINION DENYING PETITIONS FOR RECOGNITION**

### **Issues Before the Court and Summary of Ruling**

      Pending before the Court in each of these non-consolidated chapter 15 cases (collectively,

the "Chapter 15 Cases")[1] are the petitions for recognition filed by Petitioners Amir Bartov

---

[1] Chapter 15 is found under Title 11 of the United States Code; hereinafter, the "Bankruptcy Code" will
refer to chapters and sections under Title 11.

("Bartov") and Aliza Sharon ("Sharon") (each a "Receiver" and together, the "Receivers").[2] The Receivers assert that they are acting as the persons appointed as co-receivers by the Tel-Aviv-Jaffa District Court of the State of Israel (the "Israeli Court"),[3] pursuant to a receivership proceeding pending before the Israeli Court (the "Israeli Receivership Proceeding").[4]

Additionally, the Receivers assert that they are co-receivers of the entities Gold & Honey, Ltd. ("GH Ltd."), a debtor before this Court, and non-debtor entity Lucky Seven Ltd. ("Lucky Seven"), as well as co-receivers over substantially all of the known assets located in the State of Israel of Gold & Honey (1995) L.P., also a debtor before this Court ("GH LP").[5] The named debtors in these Chapter 15 Cases are also debtors in administratively consolidated chapter 11 proceedings, which were pending before this Court at the time these Chapter 15 Cases were filed. GH LP is the debtor and debtor-in-possession in case number 08-75237, filed on September 23, 2008. GH Ltd. is the debtor and debtor-in-possession in case number 08-75240, filed on September 23, 2008.[6]

For the reasons herein, the petitions for recognition in each of the Chapter 15 Cases will be denied.

---

[2] Citations to documents filed in the Chapter 15 Cases, under 09-70463, are designated as [dkt item -]; citations to documents filed in other cases will be designated by case number as well as document number.

[3] Receivership proceedings in Israel are commenced and conducted pursuant to Sections 194-201 of the Companies Ordinance [New Version] 5743-1983 (Title F: Enforcement of Rights)(hereinafter, "Companies Ordinance"). [dkt item 2 ¶ 8]

[4] The Israeli Receivership Proceeding is entitled *In the Matter of: The First International Bank of Israel, Ltd.*, Civil Motion File 22348/08, Bankruptcy File 002193/08.

[5] The cases of GH LP and GH Ltd. are jointly administered under Case No. 08-75237 (collectively, the "Chapter 11 Cases").

[6] Almond Jewelers, Inc. ("Almond Jewelers"), an affiliate of GH Ltd. and GH LP, is also a chapter 11 debtor before this Court in case number 08-75238, filed on September 23, 2008. Almond Jewelers is not a party to the Israeli Receivership Proceeding. Hereinafter, GH LP, GH Ltd., and Almond Jewelers, are collectively referred to as "Debtors."

## Findings of Fact and Conclusions of Law

The following, along with the findings of fact and conclusions of law stated on the record at the ruling conference held July 29, 2009, which are incorporated herein by reference, constitute this Court's findings of fact and conclusions of law made in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## Jurisdiction

This Court has jurisdiction over these core proceedings pursuant to 28 U.S.C. §§ 157(b) (2) (A), (G), (O), and (P), and  28 U.S.C. § 1334(b), and the Standing Order of Reference in effect in the Eastern District of New York.

## The Parties

Debtor GH LP, a New York limited partnership established on January 1, 1994, maintains an office at 16 South Maryland Avenue, Port Washington, New York.

Debtor GH Ltd., a corporation organized under the laws of the State of Israel,[7] is a general partner of GH LP and 49.5% equity holder of GH LP.

Debtor Almond Jewelers, a corporation organized under the laws of the State of New York,  is a general partner of GH LP and a 49.5% equity holder of GH LP.

---

[7] FIBI did not challenge GH Ltd.'s right to seek bankruptcy protection in the United States, even though GH Ltd. is not a United States corporation.  Section 109(a) of the Bankruptcy Code defines who may be a debtor as "a person that resides or has a domicile, a place of business, or property in the United States." 11 U.S.C. § 109(a). Section 101(41) defines a "person" to include a corporation and a partnership. 11 U.S.C. § 101(41). A foreign corporation with assets in the United States is generally amenable to filing bankruptcy in the United States.  *See Israeli-British Bank (London) Ltd. v. FDIC*, 536 F.2d 509 (2d Cir. 1976) (holding that a British banking corporation not conducting business as a bank in the United States was not a banking corporation under federal law and therefore qualified to file for relief under the Bankruptcy Act and was not disqualified under the former 11 U.S.C. § 22(a)); *see also In re Gloho Comunicacoes E Participacoes, Ltd., S.A.*, 317 B.R. 235 (S.D.N.Y. 2004); *In re Aerovias Nacionales de Colombia S.A. Avianca*, 303 B.R. 1 (Bankr. S.D.N.Y. 2003).  The propriety of GH Ltd. filing for bankruptcy relief in the United States is not before this Court.  However, the Israeli Court did express concerns about the propriety of the bankruptcy filings of GH LP and GH Ltd., as further discussed, *infra*.

First International Bank of Israel ("FIBI"), a foreign banking corporation organized and existing under the laws of the State of Israel, is a pre-petition lender to GH Ltd.  Those pre-petition loans were guaranteed by GH LP, and possibly by non-debtor entities.  Although FIBI conducts business in many countries around the world and has business contacts with the United States, it has no offices or branches within the physical borders of the United States.

The Receivers, appointed by the Israeli Court after the commencement of the Chapter 11 Cases, are the petitioners in the Chapter 15 Cases.

### **Background of the Debtors**

Almond Jewelers is a New York-based designer, manufacturer, and marketer of jewelry products made primarily from gold and other precious metals.  Almond Jewelers has asserted that during the late 1980s it encountered various manufacturing difficulties resulting from the lack of skilled employees such as tool makers, and experienced competition from other manufacturers who utilized cheap labor in developing countries.

In or about 1993, one or more of the Debtors decided to move the manufacturing facility of precious metal components (the "Components") from Westbury, New York, to Israel.  Debtors were attracted to Israel because, *inter alia*, they could obtain substantial governmental financial incentives to build a new factory for the mass production of the Components.  In 1994, the Debtors invested close to $50 million (USD) in building a manufacturing plant in Israel.  That investment was comprised of: (a) more than 30% from funds contributed or raised by Debtor; (b) approximately 30% in conditional grants from the Israeli government; and (c) approximately 40% through loans from the Israeli government.  Abatement of the repayment of the Israeli grants was conditioned upon the Debtors continuing operations in Israel for a period of not less than

seven (7) years.  Initially, the grants and loans from the Israeli government were provided to GH

Ltd., an Israeli corporation, due to the Israeli practice of not providing governmental incentives

directly to foreign partnerships.  This procedural hurdle was overcome in or about 1996, when

the Israeli government agreed to the assignment of the ownership interest of the Israeli factory to

GH LP.  Thus, by 1996, the manufacturing plant for the mass production of Components in Israel

had been completed, and operations in Israel began under the name of GH LP, which remained a

New York limited partnership.

### GH LP's Operations and Business Activities

GH LP's business consists of designing, manufacturing, and worldwide marketing and

sales of moderately priced jewelry products, including earrings, bangles, pendants, charms, rings,

bracelets and necklaces.  Typically, GH LP designs, manufactures and sells jewelry directly to

large retailers, large wholesalers, and to various other entities as a private label contractor.

Debtors assert that the design and marketing were mainly done from GH LP's United States

office in Port Washington, New York, where GH LP's overall management is located and the

overall business decisions are allegedly made.  Prior to filing the Chapter 11 Cases, GH LP

produced the Components in Israel, which were then shipped to Thailand for the production of

finished jewelry by Almond Thailand Ltd., an affiliated entity of the Debtors ("Almond

Thailand").  Almond Thailand is not a debtor before this Court.

As a result of the post-petition continued prosecution of the Israeli Receivership

Proceeding, as discussed, *infra*, GH LP and GH Ltd. no longer conduct business in Israel.

### GH Ltd.'s and GH LP's Financial History with Israel and FIBI

In 1994, GH Ltd. obtained loans and conditional grants from the State of Israel and pledged a "floating" charge on all of its assets as collateral security for the repayment of these loans and grants.  GH LP also made pledges of some of its machinery and equipment, tools and dies.

In or about 1996, the State of Israel agreed to guaranty a working capital line of credit in the principal amount of $12 million (USD) which would be provided to the Debtors (the "Working Capital Credit Line").  The Working Capital Credit Line was intended, among other uses, to provide GH Ltd. with immediate cash availability to purchase gold and other precious metals.  With the backing of the Israeli government's guaranty, GH Ltd. sought a lending institution to fund the Working Capital Credit Line.  In or about 1996, GH Ltd. selected FIBI to finance the Working Capital Credit Line, primarily due to FIBI offering a favorable interest rate, and due to FIBI having agreed to finance the Working Capital Credit Line without any guaranty from either the Israeli government or the owners of GH Ltd.  FIBI agreed to lend GH Ltd. $9 million (USD).  FIBI, as lender, and GH Ltd., as borrower, then executed the documents required to implement the Working Capital Credit Line.

At all relevant times since the inception of the Working Capital Credit Line, the Debtors maintained their primary bank accounts at FIBI.  In or about April 1997, GH LP signed a guaranty in favor of FIBI as security for the repayment of the Working Capital Credit Line.  In 2003, GH Ltd. and GH LP asked FIBI to increase the Working Capital Credit Line.  FIBI agreed, and increased the Working Capital Credit Line to approximately $12 million (USD).   As

additional collateral for the repayment of the increased Working Capital Credit Line, FIBI

required GH LP to pledge certain accounts receivables (the "Existing Contracts").  The pledge of

the Existing Contracts was memorialized by appropriate documentation including a pledge

agreement (the "Pledge Agreement").  FIBI purportedly recorded the Pledge Agreement as a lien

against the Existing Contracts with the Israeli Pledge Registrar and/or the Israeli Companies

Registrar.[8]

In or about March 2008, the Working Capital Credit Line was increased to $16 million

(USD).  At that time, FIBI required additional collateral from GH Ltd. and GH LP.

Consequently, at that time, GH LP provided FIBI with a pledge on certain machinery and

equipment.

## Summary of Litigation Between FIBI, GH LP and GH Ltd.

FIBI commenced litigation in Israel shortly after the Working Capital Credit Line was

increased in March 2008.  The following briefly summarizes the history of that litigation.

In late July 2008, FIBI seized substantially all of GH Ltd. and GH LP's assets and

accounts, and commenced the Israeli Receivership Proceeding.  Prior to the filing of the Chapter

11 Cases, a number of events occurred in the Israeli Receivership Proceeding, primarily resulting

in the Israeli Court denying FIBI's emergency and *ex parte* applications for the appointment of a

receiver.

On September 23, 2008 (the "Petition Date"), the Debtors filed the Chapter 11 Cases.[9]

---

[8] This Court is not making any findings or conclusions as to lien validity and provides this information solely for context and background.

[9] On October 6, 2008, this Court entered an order providing for the joint administration of the Chapter 11 Cases. [08-75237, dkt item 16]

Notice of the commencement of the Chapter 11 Cases was provided by Debtors to FIBI. [08-75237, dkt item 12, ¶ 18]

On October 2, 2008, notwithstanding the pendency of the Chapter 11 Cases, FIBI continued its application for the appointment of a temporary receiver before the Israeli Court. FIBI took the position before the Israeli Court that the automatic stay, which arose by virtue of the Chapter 11 Cases, did not apply to FIBI's actions or its attempt to obtain control over the property of the bankruptcy estates of GH Ltd. and GH LP. As a result of the proceedings before the Israeli Court, and with the agreement of GH Ltd. and GH LP, on October 2, 2008, Sharon was appointed as supervisor over the Debtors' businesses.[10] The Israeli Court then adjourned the October 2 hearing and its decision on FIBI's application for the appointment of a temporary receiver until October 12, 2008. [08-75237, dkt item 20, Exh. 1]

On October 3, 2008, the Debtors applied to this Court for an order determining that the automatic stay applied to the Debtors' property wherever located and by whomever held, and, in particular, to the Israeli Receivership Proceeding. The hearing on this request was scheduled on an expedited basis before this Court for October 6, 2008 (the "October 6 Hearing"). FIBI specially appeared at the October 6 Hearing represented by both New York bankruptcy counsel in person, as well as its Israeli counsel, Bartov, who appeared via telephone. FIBI asserted that this Court had no jurisdiction over FIBI and had no jurisdiction over the Israeli Receivership Proceeding.

This Court determined at the October 6 Hearing, over FIBI's objection, that the automatic

---

[10] GH Ltd. and GH LP have asserted in proceedings before this Court that their agreement to Sharon's appointment was not a voluntary agreement and was made only because they were pressured into doing so.

stay did, in fact, apply to the Debtors' property wherever located and by whomever held, and

entered an Order to that effect (the "Stay Order").  Due to the expedited nature of the October 6

Hearing, however, this Court did not reach the issue of whether the automatic stay specifically

applied to the Israeli Receivership Proceeding or whether this Court had *in personam* jurisdiction

over FIBI.  However, this Court advised FIBI that if it proceeded before the Israeli Court in the

Israeli Receivership Proceeding, it did so at its own peril. [Tr. at 98:15-17; 08-75237, dkt item

19]  The Stay Order includes the following pertinent paragraphs:

> ORDERED, that the automatic stay provided under section 362(a) of the Bankruptcy Code (the "Automatic Stay") is in full force and effect in this bankruptcy case; and it is further

> ORDERED, that the Automatic Stay stays, among other things, actions arising under section 362(a) of the Bankruptcy Code:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; and it is further

> ORDERED, that property of the estate includes property of the Debtors "wherever located and by whomever held" pursuant to section 541(a) of the Bankruptcy Code[.]

[08-75237, dkt item 17]

Following the October 6 Hearing and entry of the Stay Order, FIBI chose to continue to

prosecute the Israeli Receivership Proceeding. The Stay Order and the record of the October 6

Hearing were then presented to the Israeli Court.  In a thoughtful and thorough opinion dated

October 30, 2008 (the "October 30 Decision"), the Israeli Court declined to give effect to the automatic stay or the Stay Order, and determined that it could proceed, regardless of the pendency of the Chapter 11 Cases.  However, the Israeli Court based its analysis partially on the presumed illegitimacy of the Chapter 11 Cases, partially on the failure of GH Ltd. and GH LP to properly register the Stay Order in the Israeli Receivership Proceeding, and partially on principles of comity.[11]  The Israeli Court also stated: "There is indeed no doubt that the Court in the United States is competent to make an order concerning a stay of proceedings, which applies to all the assets of the debtor wherever they are situated." [08-75237, dkt item 99, Exh. 7 at 22] .

As a result of the post-petition proceedings before the Israeli Court, Sharon continued to act as supervisor over the Debtors' businesses.

Debtors then commenced adversary proceeding number 08-8301 against FIBI on October 30, 2008 (the "Adversary"), and sought a temporary restraining order (the "TRO Request").  This Court conducted a hearing on the TRO Request on November 6, 2008.  Supplemental briefing was permitted to be filed by November 14, 2008, and a ruling conference was scheduled for December 10, 2008.

On November 30, 2008, the Israeli Court issued a judgment appointing Bartov, an Israeli attorney for FIBI, and Sharon, an accountant, as permanent receivers for GH LP and GH Ltd. in the Israeli Receivership Proceeding.  FIBI filed a translation of the Israeli Court's ruling on December 4, 2008, with its motion to dismiss the Adversary for lack of personal jurisdiction (the

---

[11] With due respect to the Israeli Court, its analysis appeared to overlook the automatic imposition of the stay under Section 362, and the fact that no party at that time, including FIBI, had either sought or obtained dismissal of or abstention by this Court from the Chapter 11 Cases.

"Motion to Dismiss"). [08-8301, dkt item 13, Exh. 3][12]

On December 10, 2008, this Court held the previously scheduled ruling conference on the TRO Request (the "Ruling Conference"). At that time, this Court made its findings of fact and conclusions of law on the record, to the extent applicable, in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. As memorialized in a written Summary of Decision and Order entered on December 12, 2008 [08-8301, dkt item 18], this Court stated as follows:

> After due consideration, this Court denies the issuance of a TRO for the following reasons:
>
>> 1. A TRO would be redundant to the automatic stay, which is, and has been, in effect, and which prohibits FIBI from proceeding with the continuation of a judicial, administrative, or other action or proceeding against the Debtors that was commenced prior to the petition date herein, and which prohibits FIBI from proceeding to recover a claim against the Debtors that arose before the commencement of these cases, and which prohibits FIBI from any act to obtain possession of property of the estate or to exercise control over property of the estate, wherever located, and by whomever held;
>>
>> 2. FIBI has demonstrated that it can answer in damages, thus precluding this Court's determination of irreparable harm to Debtors, with such determination a likely prerequisite for the issuance of a specific TRO against FIBI.
>
> This Court does not, and need not, reach the issue of whether FIBI is subject to in personam jurisdiction in the United States. The issue of in personam jurisdiction will be determined in connection with FIBI's pending Motion to Dismiss this adversary proceeding.

[08-8301, dkt item 18]

---

[12] On July 29, 2009, this Court rendered an oral ruling denying the Motion to Dismiss. This ruling is discussed, *infra*.

On January 7, 2009, FIBI filed a motion for relief from the automatic stay or for abstention ("FIBI Lift Stay Motion") in the Chapter 11 Cases of GH LP and GH Ltd. FIBI requested this Court enter an order pursuant to Bankruptcy Code Section 362, subsections (d)(1) and (d)(2), vacating the automatic stay nunc pro tunc with respect to the Israeli Receivership Proceeding, vacating the stay to allow other creditors to take action in Israel or, in the alternative, enter an order pursuant to Section 305(a)(1) abstaining from exercising jurisdiction over and dismissing, the Chapter 11 Cases.[13] [08-75237, dkt item 98] Additionally, Bartov filed an affirmation in support of the FIBI Lift Stay Motion that included as exhibits, translations of the relevant Israeli law and certain of the various hearings held in Israel ("Bartov Declaration"). [08-75237, dkt item 99]

On January 28, 2009, the Receivers filed petitions for recognition in these Chapter 15 Cases. They seek recognition of the Israeli Receivership Proceeding as foreign main proceedings of GH LP and GH Ltd., pursuant to Chapter 15 of the Bankruptcy Code (the "Receivers' Petitions"). [dkt item 2] The Receivers each filed declarations in Support of the Receivers' Petitions (the "Receivers' Declarations"). [dkt item 3] This Court has received extensive briefing and submissions on the Receivers' Petitions as well as on the FIBI Motion to Dismiss the Adversary and the FIBI Lift Stay Motion. A ruling conference was held on those matters on July 29, 2009. That ruling conference is discussed, *infra*.

---

[13] This Court previously issued a bench ruling prior to January 7, 2009, authorizing creditors to file claims in Israel in order to protect their rights vis-a-vis FIBI. On July 29, 2009, this Court rendered an oral ruling granting the FIBI Lift Stay Motion in part, which ruling is discussed, *infra*.

## Legal Analysis

## Procedural Requirements for Recognition of a Foreign Proceeding

Chapter 15 of the Bankruptcy Code was enacted in 2005 to implement the Model

Law on Cross-Border Insolvency (the "Model Law").  The Model Law had been formulated by

the United Nations Commission on International Trade Law ("UNCITRAL"), in a process in

which the United States was an active participant. The language of Chapter 15 tracks the Model

Law, with some modifications that were designed to conform the Model Law with existing

United States law. *See In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 44-45 (Bankr.

S.D.N.Y. 2008)(citing *In re Iida*, 377 B.R. 243, 256 (9th Cir. BAP 2007)); *see also In re

Tri-Cont'l Exch. Ltd.*, 349 B.R. 627, 631-32 (Bankr. E.D. Cal. 2006) ; *United States v. Jones*,

333 B.R. 637, 638-39 (E.D.N.Y. 2005).

In order for a petition for recognition to be granted, the petition must meet several

requirements. Section 1517 requires recognition of a foreign proceeding if:

> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a); *see also In re Betcorp Ltd.*, 400 B.R. 266, 285 (Bankr. D. Nev. 2009).

Recognition under Section 1517 of the Bankruptcy Code is not a "rubber stamp exercise."

*In re Basis Yield Alpha Fund (Master)*, 381 B.R. at 40.  The Court can "consider any and all

relevant facts." *Id*. at 41.  Although Sections 1515 and 1516 are designed to make recognition as simple and expedient as possible, the court may consider proof on any element.  The ultimate burden of proof on each element is on the foreign representative. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 335 (S.D.N.Y. 2008) (noting that "the ultimate burden of proof as to each element is on the foreign representative" and citing H.R.Rep. No. 109-31, at 112 (2005),  *reprinted in* 2005 U.S.C.C.A.N. 88, 173 ("House Report")).

Although listed as the third element, the first requirement for recognition under Section 1517 is purely procedural in nature; that is, the petition must meet the pleading requirements of Section 1515. 11 U.S.C. § 1517(a)(3).  Section 1515 establishes several pleading requirements. The first factor requires that the foreign representative has filed a petition for recognition. 11 U.S.C. § 1515(a).  The Receivers have satisfied this element in each of the Chapter 15 Cases.

The second factor of Section 1515 requires the petitioner establish that a foreign proceeding exists, and that the petitioner has been appointed as the foreign representative. 11 U.S.C. § 1515(b).  The first two paragraphs of this subsection provide for what constitutes sufficient evidence, and specify that the petitioner may satisfy this requirement by providing a "certified copy of the decision commencing such foreign proceeding and appointing the foreign representative" and "a certificate from the foreign court affirming the existence of the foreign proceeding and the appointment of the foreign representative." *Id.*  The Receivers have satisfied this element in each of the Chapter 15 Cases.

The third factor under Section 1515 requires that the petition for recognition must be

accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative. 11 U.S.C. § 1515(c).  The Receivers, have also satisfied this procedural requirement in each of the Chapter 15 Cases.  Thus, Section 1517(a)(3) has been satisfied.

The Receivers have also met the requirements of the second element of Section 1517(a) because "the foreign representative applying for recognition is a person or body[.]" 11 U.S.C. § 1517(a)(2).

The first substantive issue here becomes the first delineated requirement of Section 1517(a)—whether the foreign proceeding for which recognition is sought, here the Israeli Receivership Proceeding,  is a foreign main proceeding or foreign nonmain proceeding within the meaning of Section 1502. 11 U.S.C. § 1517(a)(1).

## The Israeli Receivership Proceeding is Neither a Foreign Main Proceeding Nor a Foreign Nonmain Proceeding

The Israeli Receivership Proceeding is neither a foreign main proceeding nor a foreign nonmain proceeding.  Section 101(23) of the Bankruptcy Code provides a statutory definition of foreign proceeding, as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

Thus, for the petitions for recognition to be granted, the Receivers must prove that the

-15-

following elements exist with respect to the Israeli Receivership Proceeding, as follows:

(i) a proceeding;

(ii) that is either judicial or administrative;

(iii) that is collective in nature;

(iv) that is in a foreign country;

(v) that is authorized or conducted under a law related to insolvency or the adjustment of debts;

(vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court;[14] and

(vii) which proceeding is for the purpose of reorganization or liquidation.

*In re Betcorp Ltd.*, 400 B.R. at 276-77. Although the analysis of these elements is different for

GH LP than it is for GH Ltd., as noted, *infra*, this Court has determined that the Receivers have

not met their burden of proof in either of the Chapter 15 Cases.

The Receivers have demonstrated that all of the following elements are met here in both

Chapter 15 Cases:[15]

---

[14] Section 1502 of the Bankruptcy Code defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding." 11 U.S.C. § 1502.

[15] Although several of the reported chapter 15 Cases discuss the requirement of Section 1502(a)(4) that a foreign main proceeding is a "foreign proceeding pending in the country where the debtor has the center of its main interests," this is not an impactive issue here. Center of main interests ("COMI") is not defined in the Bankruptcy Code or in the Model Law. To aid courts in simple or uncontested cases, Section 1516(c) states that, "[i]n the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); *see also In re Bear Stearns*, 389 B.R. at 335-36 (quoting House Report at 112-13); *c.f.* FED. R. EVID. 301 (explaining that a party's rebuttal of a presumption does not shift the burden of proof; rather, the risk of nonpersuasion remains upon the party on whom it was originally cast). This Court need not and does not reach the determination of GH LP's or GH Ltd.'s COMI.

Moreover, a foreign nonmain proceeding is "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). An "establishment" is "any place of operations where the debtor carries out nontransitory economic activity." § 1502(2). Here, again, this Court need not and does not reach the determination of where GH LP and GH Ltd. have an establishment under § 1502(5).

(i) a proceeding;

(ii) that is either judicial or administrative;

(iv) that is in a foreign country;

(v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; and

(vii) which proceeding is for the purpose of reorganization or liquidation.

The Receivers, however, have not met their burden of showing that the Israeli Receivership Proceeding is collective in nature under Section 101(23)(iii). In addition, the Israeli Receivership Proceeding should not be recognized by this Court for two (2) additional reasons as to GH Ltd. and GH LP, and for a third additional reason as to GH LP. The overlapping reasons are: the Receivers were appointed in violation of the automatic stay; and recognition of the petitions would have an adverse effect on public policy, pursuant to Section 1506; further, as to GH LP, the Receivers have not met their burden of showing in the Israeli Receivership Proceeding that GH LP's assets and affairs are subject to the control or supervision of a foreign court.

### The Receivers Were Appointed in Violation of the Automatic Stay

The appointment of the Receivers in Israel was a clear violation of the automatic stay. It is axiomatic that when the Chapter 11 Cases were filed, the automatic stay went into effect. The stay automatically enjoined the continuation of any litigation against GH Ltd. and GH LP, and automatically enjoined continuing lien enforcement against GH Ltd. and GH LP to enforce a prepetition claim against the debtor. 11 U.S.C. § 362(a)(1), (3), (4), (5), and (6).

Moreover, here, FIBI proceeded in the Israeli Receivership Proceeding in spite of and in

-17-

the face of this Court's Stay Order.  FIBI knew and was specifically told that the stay applied to

all property of GH Ltd. and GH LP wherever located and by whomever held.  It would fly in the

face of the Bankruptcy Code for this Court to recognize the petitions here and authorize the post-

petition appointed Receivers to proceed in the United States when they were appointed as the

result of a knowing and willful violation of the stay by FIBI.  Although on January 7, 2009, FIBI

did file its Lift Stay Motion seeking, inter alia, relief from stay retroactive to the petition date of

the Chapter 11 Cases, retroactive relief has been denied.

     As previously noted, the Israeli Court entered the lengthy and thorough October 30

Decision, in which it determined that FIBI could proceed in Israel in spite of the automatic stay

and this Court's Stay Order.  After reviewing the background of the parties and their respective

disputes, the Israeli Court first discusses whether the Stay Order had been properly registered in

Israel as a foreign judgment under Israeli law.  The Israeli Court determined it had not been.  The

Israeli Court then discussed cases regarding whether it should recognize the Stay Order under

principles of comity, and discussed relevant cases on comity and recognition of foreign

judgment, such as *In re Nakash*, 190 B.R. 763 (Bankr. S.D.N.Y. 1996), and *Sinatra v. Gucci*, 309

B.R. 679 (S.D.N.Y. 2004). [08-75237, dkt item 99, Exh. 7 at 12-14]

     With respect specifically to the events of the October 6 Hearing, the Israeli Court noted

that this Court expressed concern at that hearing as to whether the Israeli Court would give effect

to the Stay Order.  The Israeli Court agreed that it and this Court should provide reciprocity for

properly registered United States federal court orders and recognize comity between them.  The

Israeli Court also noted that, in spite of the broad, worldwide grant of jurisdiction given to United

States federal courts over a debtor's assets wherever located, a United States court cannot control the actions of a foreign court, nor can it exercise control over assets in a foreign country without the assistance of the foreign court.

The Israeli Court then noted that GH LP's and GH Ltd.'s center of operations are in Israel, not New York. [08-75237, dkt item 99, Exh. 7 at 26]  Ultimately, however, the Israeli Court decided to proceed, noting, in part, that while it had jurisdiction to recognize the Stay Order, "in the present case no process of rehabilitating the respondent [GH Ltd., GH LP, and Lucky Seven] has begun in the court in New York" and that "it is desirable that only one court should control the overall rehabilitation or winding up of the company." [08-75237, dkt item 99, Exh. 7 at 25]

The Israeli Court did not give effect to the instantaneous imposition of the stay, which arises by operation of law and without the need for an order to impose the stay.  In essence, the Israeli Court made a decision to lift the automatic stay.  Whether this Court would have granted stay relief in October 2008 is an unanswerable question and moot because no one sought such relief.

Further, FIBI continued to prosecute the Israeli Receivership Proceeding even after this Court orally ruled on December 10, 2008, and again by written order on December 12, 2008, that the stay prohibited FIBI's actions in Israel, and that "the automatic stay applied to the Israeli Receivership Proceeding to the extent property of the bankruptcy estate is involved." [08-8301, dkt item 18].

The United States Court of Appeals for the Second Circuit has previously recognized that

actions taken in violation of the stay are void. *See, e.g.*, *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc.*, *(In re 48th Street Steakhouse, Inc.)*, 61 B.R. 182 (Bankr. S.D.N.Y. 1986), aff'd, 835F.2d 427 (2d Cir. 1987), *cert. denied*, 485 U.S. 1035 (1988). The purpose of the stay is to give the debtor a breathing spell from litigation and collection activities. Judicial acts and proceedings in violation of the automatic stay are generally void and of no effect. *Interstate Commerce Comm'n v. Holmes Transp., Inc.*, 931 F.2d 984, 988 (1st Cir. 1991) (automatic stay nullifies post-petition actions and proceedings against the debtor). "The automatic stay is designed to effect an immediate freeze of the status quo at the outset of the chapter 11 proceedings." *Id*.

Once the Chapter 11 Cases were filed, the Bankruptcy Code contains a number of provisions which FIBI could have invoked prior to proceeding in Israel. FIBI could have requested this Court to determine that the filing of the Chapter 11 Cases was not legitimate, and sought stay relief under Section 362, abstention under Section 305, and/or dismissal or conversion under Section 1112. FIBI failed to do so. However, it is for this Court, with jurisdiction over the Chapter 11 Cases, to decide whether and when to grant relief from the stay, but respectfully, not for the Israeli Court to decide to not recognize and apply the stay.

### The Israeli Receivership Proceeding Is Not "Collective in Nature" and the Affairs of GH Ltd. and GH LP Are Not Subject to the Control of a Foreign Court

The Israeli Receivership Proceeding is not "collective in nature" and the affairs of GH Ltd. and GH LP are not subject to the control of a foreign court. The Israeli Receivership Proceeding does not meet the requirements of being "collective in nature." A proceeding that is

"collective in nature" is one that "considers the rights and obligations of all creditors."[16] *Betcorp*, 400 B.R. at 281 (holding that a voluntary Australian winding-up proceeding was collective in nature because any attempt by a creditor to undermine the orderly, cooperative system that accounted for the rights of all creditors was outlawed); *In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 275 B.R. 699, 707 (Bankr. S.D.N.Y. 2002) (holding that a "scheme of arrangement" for creditors to estimate and file claims was collective in nature because all creditors had a right to object to the proposed schemes and the court was involved in approving all plans). The *Betcorp* court noted, "This is in contrast, for example, to a receivership remedy instigated at the request, and for the benefit of, a single secured creditor." *Betcorp*, 400 B.R. at 281.

As the *Betcorp* court also noted, a receivership proceeding, as opposed to a "collective" proceeding, is generally regarded as more prejudicial to the creditor body as a whole than federal bankruptcy proceedings. *Id*. at 281.

The Receivers rely on *Bear Stearns* for the proposition that a foreign decision certified by another country is presumptively a recognizable foreign proceeding, and that all requirements within Section 101(23) are thus presumptively met. *See Bear Stearns*, 389 B.R. at 333. However, recognition is not a "rubber stamp exercise," and any such presumption is rebuttable upon the Court's examination of "any and all relevant facts." *Alpha Fund (Master)*, 381 B.R. at 44-45; *see also In re Oversight and Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008) (holding that the court is not bound by the presumption and is free to make its

---

[16] The proposition that a foreign proceeding must be for the general benefit of creditors is also embodied in Section 1501, which lists the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors," among its primary objectives.  11 U.S.C. § 1501(a)(3).

own determination).

The Israeli Receivership Proceeding is not simply collective in nature. It does not require the Receivers to consider the rights and obligations of all creditors. The proceeding was commenced under the Israeli Companies Ordinance. As GH Ltd. and GH LP contend, the Receivership is more akin to a individual creditor's replevin or repossession action than it is to a reorganization or liquidation by an independent trustee. The Israeli Receivership Proceeding is primarily designed to allow FIBI to collect its debts, and is not a scheme of arrangement or a winding up proceeding, both of which are instituted by a debtor for the purposes of paying off all creditors with court supervision to ensure evenhandedness. Although Bankruptcy Code Section 1502 does recognize that a foreign proceeding may be for the purpose of reorganization or liquidation, the proceeding must still be collective in nature.

The Bartov Declaration acknowledges that there is a distinct difference between a "receiver" and a "liquidator" under Israeli law. [08-75237, dkt item 99 ¶ 9] Section 201 of the applicable Israeli law utilized by FIBI to commence the Israeli Receivership Proceeding identifies, *inter alia*, that a "liquidator" and "receiver" under Israeli law serve separate and unique functions. Section 201 also elucidates the difference between an enforcement proceeding and an insolvency proceeding.[17] [08-75237, dkt item 99, Exh. 2] By way of further contrast, Israeli law does provide for collective creditor functions under the Israeli Bankruptcy Ordinance, which models some provisions of the Bankruptcy Code. [08-75237, dkt item 99, Exh. 2]

---

[17] Notably, Bartov, as a Receiver, may have a difficult time considering the interests of all creditors as he continues to work as a lawyer for FIBI.

However, the Israeli Receivership Proceeding is not proceeding under the Israeli Bankruptcy Ordinance. This conflict is another example of the singular as opposed to collective nature of the Israeli Receivership Proceeding.

The Receivers do not dispute this material difference between the ordinances, and instead rely upon an article from Standard & Poor's Rating Services ("S&P Article")[18] that merely recites that a receiver generally must act as an officer of the court and thus impliedly owes a duty to all creditors. [dkt item 17] The S&P Article, however, is neither legal authority nor persuasive.

Further, the Israeli decision appointing the Receivers heavily examines the loan contract of GH LP and GH Ltd. with FIBI in order to determine whether FIBI had the grounds to demand immediate repayment of the debt. The Israeli Court declared that such grounds existed based on the contract of the parties, inaccurate declarations by the borrowers, admissions of insolvency, and changed ownership. [08-75237, dkt item 99, Exh. 1] Thus, the Israeli Receivership Proceeding does not meet the Bankruptcy Code's requirement that a foreign proceeding be "collective in nature." 11 U.S.C. § 101(23).

### The Israeli Receivership Proceeding Does Not Involve GH LP's Assets and Affairs

The Israeli Receivership Proceeding does not involve GH LP's assets and affairs. A debtor's assets *and* affairs must be subject to the jurisdiction of a foreign court. 11 U.S.C. § 101(23) (emphasis supplied). Here, while the Israeli Court may have jurisdiction over the assets

---

[18] Debt Recovery For Creditors and The Law of Insolvency in Israel, Ratings Direct (Standard & Poor's Rating Services) Aug. 20, 2008, at 5).

of GH LP and GH Ltd., the Receivers have not carried their burden of showing that GH LP's affairs are subject to the Israeli Court's jurisdiction.  The Receivers have proven that all of GH LP's assets present in Israel, such as gold, silver, receivables, plants, and equipment, are under the control of the Israeli Court in the receivership proceeding. [08-75237, dkt item 99, Exh. 3] There is, however, no proof of the Receivers having been given authority of GH LP's business affairs. Moreover, FIBI conceded at oral argument that the Receivers were not provided with authority over the business affairs of GH LP.

### The Receivers' Offensive Use of an Automatic Stay Violation Would Be Manifestly Contrary to the Public Policy of the United States

A petition for recognition should be denied if recognition would be manifestly contrary to the public policy of the United States. 11 U.S.C. § 1506.  Recognition of the Israeli Receivership Proceeding as a foreign proceeding would be manifestly contrary to the public policy of the United States because such recognition would reward and legitimize FIBI's violation of both the automatic stay and this Court's Orders regarding the stay.

While the legislative history of Section 1506 demonstrates that this exception should be applied narrowly, it should be invoked when fundamental policies of the United States are at risk. *See In re Iida,* 377 B.R. 243 (B.A.P. 9th Cir. 2007)*; In re Atlas Shipping A/S,* 404 B.R. 726 (Bankr. S.D.N.Y. 2009);  *In re Ernst & Young, Inc*., 383 B.R. 773, 781 (Bankr. D. Colo. 2008) (citing H.R.REP. NO. 109-31 at 109 (2005), *reprinted in* U.S.C.C.A.N. 88, 172).

In opposing the application of Section 1506, the Receivers rely upon *Ernst & Young*, which involved a minimal loss in the distribution that wronged investors would receive by

recognizing the foreign proceeding. *Ernst & Young*, 383 B.R. at 781.   However, *Ernst & Young* does not involve a fundamental policy of the United States.  Small increases in costs of liquidation or decreases in recovery are commonplace in bankruptcy matters. *Ernst & Young,* 383 B.R. at 781.

The other case the Receivers rely upon, *In re Ephedra Prods. Liab. Litig*., 349 B.R. 333, 335-37 (S.D.N.Y. 2006), involved the potential inability for United States claimants to have a jury trial in Canada, the country of the foreign proceeding, if a claims resolution procedure ordered by an Ontario, Canada insolvency court was implemented.   A Canadian company which had marketed ephedra commenced an insolvency proceeding in Ontario, Canada, and later agreed to a claims procedure, which the Ontario court approved. *Id.* at 333-35.  The procedure at issue would allow the Ontario insolvency court to hear and determine, *inter alia*, claims arising from the alleged use of ephedra, which claims were asserted in lawsuits which had been filed in the United States in various state and federal courts.  Those lawsuits had been consolidated before the United States District Court in New York.  Although the potential right to a trial by jury involved in *Ephedra* certainly concerns a fundamental United States right, as the *Ephedra* court stated, "neither § 1506 nor any other law prevents a United States court from giving recognition and enforcement to a foreign insolvency procedure for liquidating claims simply because the procedure alone does not include a right to jury." *Ephedra,* 349 B.R. at 335.  In addition, the United States District Court only approved the Ontario claims resolution procedure after the Ontario court adopted certain procedural changes requested by the United States court "to assure greater clarity and procedural fairness." *Id.* at 334.

Further, jury trials in bankruptcy courts are quite rare and not typically invoked in a claims allowance process.  On the other hand, allowing the offensive use of a stay violation here would severely impinge the value and import of the automatic stay.  Recognizing a foreign seizure of a debtor's assets postpetition would severely hinder United States bankruptcy courts' abilities to carry out two of the most fundamental policies and purposes of the automatic stay– namely, preventing one creditor from obtaining an advantage over other creditors, and providing for the efficient and orderly distribution of a debtor's assets to all creditors in accordance with their relative priorities.

Moreover, condoning FIBI's conduct here would limit a federal court's jurisdiction over all of  the debtors' property "wherever located and by whomever held," as any future creditor could follow FIBI's lead and violate the stay in order to procure assets that were outside the United States, yet still under the United States court's jurisdiction. *See* 28 U.S.C. § 1334(e). Because of the serious ramifications that would ensue in derogation of fundamental United States policies, this Court should not recognize the Israeli Receivership Proceeding as a foreign proceeding.

### Summary of Rulings On the FIBI Motion to Dismiss the Adversary and the FIBI Lift Stay Motion

At the Ruling Conference, this Court ruled that Debtors have made a prima facie showing that this Court can exercise specific personal jurisdiction over FIBI.  That ruling was based in part on FIBI's extensive business contacts with the United States, as well as in part on FIBI's

actions in violating the stay having the effect of eviscerating any prospect GH Ltd. and GH LP

may have had to successfully reorganize in the United States.  Thus, FIBI's Motion to Dismiss

the Adversary was denied.

As for the FIBI Lift Stay Motion, this Court did grant prospective stay relief to FIBI, and

did abstain from hearing any issues regarding the rights of FIBI and any other creditors with

respect to property of any of the Debtors located in the State of Israel.  The evidence before this

Court demonstrates that FIBI's collateral is worth far less than the debts owed by GH Ltd. and

GH LP.  In addition, GH Ltd. and GH LP do not own the plant in Israel from which they

operated, and that facility is being foreclosed or sold to satisfy debts owed to FIBI by the owner

of that facility.  These cases are now liquidating chapter 11 cases, not candidates for

reorganization.  This Court also recognizes, under principles of both comity and practicality, that

the most efficient and most sensible cross-national use of judicial and parties' resources is to

have the Israeli Court decide what the debtor-creditor relationships are as between FIBI, GH Ltd.

and GH LP, and how to effectuate each parties' rights and remedies, particularly given the choice

of law provisions in the parties' agreements, the situs of FIBI and GH Ltd. being in Israel, and

most of the relevant assets being located in Israel.[19]

## Conclusion

The Receivers have failed to satisfy their burden of proof  that the  Israeli Receivership

---

[19] Even if recognition were granted for these Chapter 15 Cases, § 1520 only makes §§ 361 and 362
applicable with respect to the debtor and property of the debtor within the United States. *Atlas*, 404 B.R. at 739.  The
full automatic stay, however,  was already in effect as to all assets of GH Ltd. and GH LP wherever located.  Further,
granting recognition would presumably leave FIBI to consider itself free to continue to violate the stay in Israel and
elsewhere outside the United States.

Proceeding  meets all of the requirements of a foreign proceeding within the definition of Section 101(23) of the Bankruptcy Code.  Furthermore, the Israeli Receivership Proceeding was continued by FIBI in violation of both the automatic stay and Orders of this Court reinforcing that stay.  Recognition of such a proceeding would harm the United States's ability to carry out fundamental bankruptcy and jurisdictional policies.  Therefore, this Court denies the Receivers' Petitions for Recognition of the Israeli Receivership Proceeding as a foreign proceeding under Chapter 15 of the Bankruptcy Code.  This Court will issue separate Orders hereon.



**Dated: August 21, 2009**
     **Central Islip, New York**

_____
         **Alan S. Trust**
 **United States Bankruptcy Judge**